**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

IRONMARK, INC.,                                    )
UNITED BOOK PRESS, INC., JEFF OSTENSO,             )
ERIK BOHNENSTENGEL,                                )
CHRIS MARZULLO, and MATT MARZULLO,                 )
     9040 Junction Dr., Suite 2                    )
     Annapolis Junction, MD 20701,                 )
                                                   )
          *Plaintiffs*,                         )
                                                   )
v.                                                 )        **CASE NO. _____**
                                                   )
HERBERT H. JACKSON, JR., IN HIS                    )
OFFICIAL CAPACITY AS ACTING DEPUTY                 )
DIRECTOR OF THE GOVERNMENT                         )        **COMPLAINT**
PUBLISHING OFFICE;                                 )
                                                   )
and                                                )
                                                   )
THE GOVERNMENT                                     )
PUBLISHING OFFICE,                                 )
     732 North Capitol Street, NW                  )
     Washington, DC 20401,                         )
                                                   )
     Serve:  The Honorable Jessi K. Liu,           )
             U.S. Attorney for the         )
             District of Columbia          )
             555 4th Street, N.W.          )
             Washington, D.C. 20530        )
                                                   )
             The Honorable William Barr    )
             Attorney General of the United States)
             U.S. Department of Justice    )
             950 Pennsylvania Avenue, N.W. )
             Washington, D.C. 20530        )
                                                   )
             The Honorable Herbert H. Jackson, Jr.)
             Acting Deputy Director of the )
             Government Publishing Office   )
             732 North Capitol Street, NW   )
             Washington, DC 20401,         )
                                                   )
     *Defendants*.                                 )

**COMPLAINT**

This is an action seeking to void the arbitrary and capricious decision of the Government Publishing Office ("GPO") to stigmatize and debar Plaintiffs Ironmark, Inc., United Book Press, Inc., Jeff Ostenso, Erik Bohnenstengel, Chris Marzullo, and Matt Marzullo from contracting with GPO for a period of three years based upon an administrative error made by the company that has no bearing on Plaintiffs' present responsibility.  The defendant, Herbert H. Jackson, Jr., is sued in his official capacity as the Acting Deputy Director of GPO.  Plaintiffs Ironmark, Inc., United Book Press, Inc., Jeff Ostenso, Erik Bohnenstengel, Chris Marzullo, and Matt Marzullo state as follows:

## I.    INTRODUCTION

1.    This case arises out of GPO's arbitrary and capricious decision to debar Plaintiffs for an administrative error made by Ironmark that had no impact on contract performance and thus caused no damages to the Government, and had no effect on Plaintiffs' present responsibility. GPO's actions have stigmatized, and continue to stigmatize, Plaintiffs.  GPO's debarment of Plaintiffs was arbitrary and capricious, an abuse of discretion, without evidentiary support, without due process of law, and not in accordance with the law, including GPO's suspension and debarment policies.  The Plaintiffs are debarred as GPO contractors, subcontractors, or contractor's representatives.  As a result of the debarment, the Plaintiffs are excluded from receiving GPO contracts, and the GPO shall not solicit offers from, award contracts to, or consent to subcontracts with these contractors.

2.    GPO's Contractor Suspension and Debarment Procedures are contained in GPO Directive 110.11C ("GPO Directive"), a copy of which is attached as **Exhibit 1**.

3.    Debarment of a contractor from federal procurement and nonprocurement programs is a serious, stigmatizing action.  *See* GPO Directive, ¶5.b; 48 C.F.R. § 9.402(b).

Accordingly, a debarment must be imposed only in extreme circumstances where it is necessary for the Government's protection.  *See* GPO Directive ¶5.b; 48 C.F.R. § 9.402(b).  Further, a contractor or individual may only be debarred for serious wrongful conduct.  *See* GPO Directive, ¶9; 48 C.F.R. § 9.406-2.

4.      The debarments at issue in this case arose after Ironmark and United Book Press, sister companies indirectly owned by the same individuals, executed a bill of sale under which Ironmark purchased all of the assets of United Book Press, which included several GPO contracts. Ironmark continued to perform on the contracts without following the required novation process. Once the issue was brought to Ironmark's attention, it sought to remedy the oversight by working with GPO personnel on the execution of a novation.  However, before the novation process was completed, GPO proposed the Plaintiffs for debarment.  Plaintiffs did not attempt to mislead or deceive the government, but rather did not attempt to novate the contracts at issue due to an administrative oversight.  The debarment of Plaintiffs is not a sanction imposed in the public interest to protect the Government, but rather is a punishment for an administrative mistake.

5.      The effect of GPO's action is that Plaintiffs have suffered and will suffer the stigma of debarment and be unable to compete for GPO contracts for 3 years, even though there was no violation or action so serious as to justify debarment.

6.      The debarments of Ironmark, Inc., United Book Press, Inc., Jeff Ostenso, Erik Bohnenstengel, Chris Marzullo, and Matt Marzullo are arbitrary and capricious, an abuse of discretion, without a legal basis, unsupported by evidence, without due process of law, and not in accordance with applicable law, regulations, or GPO procedures.  For these reasons, the debarments must be set aside.

## II.     PARTIES

7.      Plaintiff Ironmark, Inc. is a Maryland corporation, with its principal place of business at 9040 Junction Dr., Suite 2, Annapolis Junction, MD 20701.

8.      Plaintiff United Book Press, Inc. was a Maryland corporation, but is no longer a functioning concern.  Since January 2015, United Book Press indirectly shared common ownership with Ironmark.  On November 10, 2017, Ironmark purchased all of the assets of United Book Press, at which point United Book Press ceased operating.

9.      Plaintiff Jeff Ostenso is an individual residing in the State of Maryland.

10.     Plaintiff Erik Bohenstengel is an individual residing in the State of Maryland.

11.     Plaintiff Chris Marzullo is an individual residing in the State of Maryland.

12.     Plaintiff Matt Marzullo is an individual residing in the Commonwealth of Pennsylvania.

13.     Defendant Herbert H. Jackson, Jr. is the Acting Deputy Director of the Government Publishing Office. In his official capacity, he resides at 732 North Capitol Street, NW, Washington, DC 20401.  Acting Deputy Director Jackson is responsible for the actions of GPO.

14.     Defendant GPO is an agency of the United States Legislative Branch, with its principal place of business at 732 North Capitol Street, NW, Washington, DC 20401.  Defendant GPO is an agency within the meaning of the Administrative Procedures Act ("APA").

## III.    JURISDICTION AND VENUE

15.     This action arises under the APA, 5 U.S.C. §§ 701-706.

16.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1346, and 2201. An actual and justiciable controversy exists between Plaintiffs and Defendants as to which Plaintiffs require declaratory relief.

17.     The relief requested is authorized by 5 U.S.C. § 702 (APA); 28 U.S.C. § 1651 (All Writs Act); 28 U.S.C. § 2201 (Declaratory Judgment Act); 28 U.S.C. § 2202 (further relief); and the United States Constitution.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), (e), because the District of Columbia is a convenient forum.  Herbert H. Jackson, Jr., in his official capacity as Acting Deputy Director of GPO, resides in the District of Columbia. GPO is a legislative agency of the United States with its office in the District of Columbia.

19.     Subject matter jurisdiction is proper under the APA because Defendants' actions in imposing debarment are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and applicable regulations.  5 U.S.C. §§ 702, 706.

20.     Subject matter jurisdiction is proper under the APA because Plaintiffs' alleged conduct does not warrant the sanction imposed.  5 U.S.C. § 706.

21.     Subject matter jurisdiction is proper under the APA because Defendants' actions exceed their statutory authority.  *Id.*

22.     Subject matter jurisdiction is proper under the APA because Defendants' actions contradict GPO's debarment policies.

23.     Subject matter jurisdiction is proper under the United States Constitution (Violation of Constitutional Due Process), including the Fifth amendment.

24.     All prerequisite actions to the filing of this matter have occurred.

**IV.     FACTS**

   **A.     <u>Background on Ownership of United Book Press and Ironmark</u>**

25.     Ironmark is owned by two individuals, Defendant Jeff Ostenso and Scott Hargest. Ironmark (and its predecessor) has been a vendor of GPO for over 60 years, with zero issues in

performance.  The company began as Frank Gumpert Printing, which Jeff Ostenso took control of 32 years ago.  As a second-generation family member, Jeff Ostenso has grown the company (which later changed its name to Ironmark) from a 12-person commercial printing company to a company with over 150 employees that is one of the top 3 printing companies in the D.C.-Maryland-Virginia area.

26.     Part of Ironmark's growth and success has been through the acquisition of other printing companies and creating efficiencies within one business structure.  Ironmark's acquisition of United Book Press was part of this growth strategy.

27.     On January 29, 2015, Jeff Ostenso and Scott Hargest, along with Tim Dilli, formed a holding company called UBP Holdings, Inc.  UBP Holdings was formed for the sole purpose of purchasing United Book Press.  Jeff Ostenso and Scott Hargest together owned seventy-nine percent (79%) of UBP Holdings.

28.     Tim Dilli sold his complete stake in UBP Holdings back to the company on January 19, 2018, and resigned his employment from Ironmark on February 2, 2018.  Thus, as of February 2, 2018, Tim Dilli had no interest in United Book Press, UBP Holdings, or Ironmark.

29.     On January 31, 2015, UBP Holdings purchased 100% of the shares of stock in United Book Press ("Stock Purchase").  Because the transaction was structured as a stock purchase, there was no requirement to novate any government contracts held by United Book Press, as United Book Press remained a going concern and the contractor of record.

### B.     Operation of United Book Press and Ironmark as "Sister" Companies

30.     Following the Stock Purchase, both Ironmark and United Book Press were indirectly owned by the same individuals, Jeff Ostenso and Scott Hargest.  As a result, Ironmark and United Book Press operated as "sister" companies, sharing resources and management.

Ironmark and United Book Press shared a single line of credit, so that the two companies were essentially operating out of a single pool of money. The two companies also shared a payroll provider, with Ironmark paying 100% of the fees. Ironmark also served as a guarantor for United Book Press on its facilities lease, royalties, and new equipment purchases. Ironmark and United Book Press had an overlap in personnel, management, and resources. Jeff Ostenso served as the Chief Executive Officer of both Ironmark and United Book Press, and the management team from United Book Press regularly attended Ironmark management meetings.

31.     On November 10, 2017, Ironmark purchased all of the assets and assumed all liabilities of United Book Press, pursuant to a bill of sale ("Asset Sale"). United Book Press was no longer a functioning concern following the Asset Sale.

32.     Because Ironmark and United Book Press shared ownership, management, and resources, there was effectively no change in the day-to-day operations relating to contracts held by United Book Press.

33.     Defendant Erik Bohnenstengel was the General Manager of United Book Press following the Stock Purchase. As the General Manager of United Book Press, Erik Bohnenstengel managed the company's portfolio of GPO contracts. Following the Asset Sale, Erik Bohnenstengel became an employee of Ironmark, Manager of the Book Division, but his duties and responsibilities remained identical to those under his previous position with United Book Press, *i.e.*, managing the portfolio of GPO contracts.

34.     Since 2011, Defendant Chris Marzullo has been the Vice President of Operations at Ironmark. Following the Stock Purchase, Chris Marzullo also became the Vice President of Operations at United Book Press. Chris Marzullo served as the Vice President of Operations for both companies until United Book Press shut down following the Asset Sale. Following the Asset

Sale, Chris Marzullo continued to serve as the Vice President of Operations at Ironmark. Chris Marzullo's duties and responsibilities in his current position at Ironmark remain identical to his duties and responsibilities under his position as Vice President at United Book Press.

### C.     Award and Performance of GPO Contract for Program 894-S

35.     On November 22, 2013, United Book Press was awarded a term contract by GPO for Program 894-S.  The requirements of Program 894-S were the production of bound volumes of United States Reports on behalf of the Supreme Court of the United States. Later, GPO awarded several small purchase contracts to United Book Press.  Similar to Program 894-S, these smaller contracts required the production of case-bound books, which entailed filmmaking, printing, case-binding, packing, and distribution.  The term contract for Program 894-S and the smaller purchase contracts shall be collectively referred to as "the Contracts."

36.     United Book Press performed all requirements of the Contracts at its facility at 1807 Whitehead Road, Baltimore, MD 21207 ("Whitehead Road Facility").

37.     Throughout the performance period of the Contracts, United Book Press met all production and delivery requirements of the Contracts.

38.     Following the Asset Sale, Ironmark continued performance of the Contracts.  There was no change in the management or personnel working on the Contracts, and Ironmark continued producing the required items at the Whitehead Road Facility.  All required items were produced and delivered by Ironmark, and invoices were submitted in Ironmark's name.

39.     Because there was no change in the personnel or facilities performing the requirements of the Contracts, no one at either Ironmark or United Book Press thought to notify GPO of the Asset Sale or initiate a novation of the Contracts.  This was an administrative oversight acknowledged by the Plaintiffs, but in no way was there any attempt to mislead or deceive GPO.

40.     At no point during performance of the Contracts did GPO complain about the work being performed.

41.     At some time prior to April 2017, while performance of the Contracts was ongoing, Ironmark made a business decision to shut down the Whitehead Road Facility.  The Whitehead Road Facility's primary function was to produce books.  However, the book production industry had changed dramatically over recent years, and while the Whitehead Road Facility was still meeting the requirements of the GPO Contracts, it was operating with outdated and inefficient equipment.  In order to take advantage of newer equipment at Ironmark's other production facility, which allowed for better efficiency and lower operating costs, Ironmark made the decision to shut down the Whitehead Road Facility and move all production to the other Ironmark production facility.

42.     Because Ironmark continued to meet all production and delivery requirements under the Contracts, no one at Ironmark thought to notify GPO of the change in production facilities.  This was an administrative oversight acknowledged by the Plaintiffs, but in no way was there any attempt to mislead or deceive GPO.

43.     Since the administrative mistakes were discovered, Ironmark has instituted internal policies designed to prevent such errors from occurring in the future.  These policies establish a process for any acquisition whereby Ironmark will initiate a legal review of all government contracts held by the acquisition target to identify novation and notification requirements and put a plan in place to properly meet those requirements.

**D.      Submission of Proposal for GPO 1205-S Program**

44.     United Book Press held a contract for GPO's 1205-S Program for over 20 years.  The 1205-S Program generally required printing of text and covers, sewing and case binding

Record Books for the United States Supreme Court.  The 1205-S Program also required shrink-wrapping, labeling, and packing of these books per GPO specifications.  United Book Press's contract for the most recent 1205-S Program expired in August 2017.

45.     Plaintiff Erik Bohnenstengel was the General Manager of United Book Press, responsible for oversight of the company's GPO contracts.  Around the time of the expiration of United Book Press' previous 1205-S Program contract, Mr. Bohnenstengel began preparations for submitting a bid in response to an expected new solicitation for the 1205-S Program.  When Mr. Bohnenstengel began the draft of a bid for the new 1205-S Program, the Asset Sale had not yet occurred and the Whitehead Road Facility was still the only facility used by United Book Press for book production.

46.     GPO delayed the release of the new solicitation for the 1205-S Program until January 2018, which caused Mr. Bohnenstengel to put a hold on bid preparation.  Once the 1205-S solicitation was issued in January 2018, Mr. Bohnenstengel continued the process of preparing a bid for the program.  Because Mr. Bohnenstengel began preparing the bid documents prior to the Asset Sale, the bid documents were still in the name of United Book Press. Mr. Bohnenstengel had the same duties for both United Book Press and Ironmark before and after the Asset Sale – management of the GPO contracts, and the two companies had effectively been operated side-by-side since the Stock Purchase.  Thus, it did not occur to him, or anyone at Ironmark, to change the name of the company on the bid from United Book Press to Ironmark.

47.     In March 2018, Ironmark mistakenly submitted a bid to GPO for the 1205-S program with United Book Press' name on the bid.  This was an administrative oversight acknowledged by the Plaintiffs, but in no way was there any attempt to mislead or deceive GPO.

48.     When the bid was submitted for the 1205-S program, the Whitehead Road Facility was still being used by Ironmark.  Thus, the bid identified the Whitehead Road Facility as the production facility that would be used for the required work.  After the shutdown of the Whitehead Road Facility, no one at Ironmark recognized that GPO should be notified of the change in production facilities, and that the 1205-S program bid should be updated.  This was an administrative oversight acknowledged by the Plaintiffs, but in no way was there any attempt to mislead or deceive GPO.

         E.     **Background of Debarment**

49.     Because Ironmark included the Whitehead Road Facility in its bid (submitted in United Book Press' name) for the new 1205-S program contract, GPO conducted a site visit at the facility at some point in April 2018 after the facility had been shut down.  At the site visit the GPO representative discovered that the Whitehead Road Facility was no longer operating.

50.     On April 18, 2018, GPO sent to United Book Press a Show Cause Letter seeking an explanation for the shutdown of the Whitehead Road Facility, as well as the failure to disclose the shutdown to GPO.  In the Show Cause Letter, GPO acknowledged that United Book Press had continued performance under the Contracts.

51.     On April 19, 2018, Ironmark submitted a response to the Show Cause Letter.  In this response, Ironmark explained that Ironmark had taken over the obligations of the Contracts following the Asset Sale.  The response also explained Ironmark's decision to move production operations to another Ironmark facility.

52.     On April 25, 2018, GPO requested additional information from Ironmark regarding the Asset Sale, which was provided by Ironmark the following day.  At all times following receipt

of the Show Cause Letter, Ironmark has been completely cooperative and transparent with GPO, responding quickly to all correspondence and requests for information.

53.     On May 3, 2018, GPO notified Ironmark that because of the Asset Sale, the Contracts would need to be novated from United Book Press to Ironmark.  Following this notification, Ironmark worked diligently with GPO to submit the proper information needed to novate the Contracts.

54.     From May 7, 2018, through June 14, 2018, Ironmark was in regular communication with several people at GPO, including Sarah Jackson, a GPO Senior Printing Specialist.  During this time Ironmark fully cooperated with GPO by submitting documents required for the novation of the Contracts and answering any other questions posed by GPO.

55.     On June 29, 2018, Ms. Jackson informed Ironmark that GPO had all documents needed to process the novation, and the novation package was being reviewed by GPO counsel.

56.     On July 9, 2018, Ironmark received a Notice of Proposed Debarment ("Proposed Debarment"), a copy of which is attached as **Exhibit 2**.  The Proposed Debarment noted that United Book Press transferred four GPO print orders under the Contracts over to Ironmark without notifying GPO.  (Proposed Debarment, p. 1).  The Proposed Debarment also noted that Ironmark submitted invoices totaling $91,437.57 for work that was performed under the Contracts.  *Id.*  The Proposed Debarment concluded "Because of the ease in which United Book Press and Ironmark were willing to misrepresent who was performing the predominant production requirement under various GPO term contracts, the Government cannot form a reasonable expectation these contractors meet the standards of a responsible vendor.  Therefore, it is in the best interest of the government to bar United Book Press and Ironmark and their affiliates from doing further business with GPO." *Id.* at 2.

57.     The Proposed Debarment proposed for debarment United Book Press, Erik Bohnenstengel, Tim Dilli, Chris Marzullo, Ironmark, Jeff Ostenso, and Matt Marzullo.   The Proposed Debarment stated that these entities and individuals were being proposed for debarment in accordance with the GPO Directive.   *Id.* at 2-3.   However, the Proposed Debarment did not state the cause(s) relied upon under the GPO Directive in proposing debarment.

58.     On August 3, 2018, the Plaintiffs submitted to GPO a response to the Proposed Debarment ("Debarment Response"), a copy of which is attached as **Exhibit 3**.  In the Debarment Response, Ironmark recognized that there were failures to follow proper administrative procedures, including the failure to novate the Contracts and the failure to notify GPO of the closure of the Whitehead Road Facility.  (Debarment Response, pp. 4-5).   However, Ironmark stated that Ironmark had met all requirements under the Contracts, and fully intended to continue to do so.  *Id.* at 7-8.   The Debarment Response noted that the mistakes made by the Plaintiffs were administrative oversights, and not done to deceive or mislead GPO.

59.     The Debarment Response noted that the Proposed Debarment did not specify the basis for proposing debarment of the Plaintiffs.   *Id*. at 6.   Nevertheless, the Debarment Response stated that none of the possible bases for debarment listed in the GPO Directive justify debarment of the Plaintiffs.  *Id.*   The administrative oversights at issue, and fully acknowledged by Ironmark, do not rise to the standard of ethical behavior for which debarment is necessary.   The Debarment Response pointed out that the Proposed Debarment was an improper punishment for administrative mistakes made by the Plaintiffs.  *Id.*

60.     The Debarment Response noted that once the administrative mistakes were brought to the attention of the Plaintiffs, the Plaintiffs fully cooperated with GPO on resolving the issue.   *Id.* at 4.   Since that time, Ironmark has instituted new corporate policies to prevent similar

administrative mistakes from occurring in the future.  These policies establish a process for any acquisition whereby Ironmark will initiate a legal review of all government contracts held by the acquisition target to identify novation and notification requirements and put a plan in place to properly meet those requirements.

61.     The Debarment Response pointed out to GPO that none of the administrative mistakes made by Plaintiffs affected the Plaintiffs' present responsibility.  (Debarment Response, pp. 8-9).  Because Plaintiffs are presently responsible, there is no basis for debarment.

### F.     Debarment of the Plaintiffs

62.     The GPO Directive requires the GPO Debarring Official, which in this case was Defendant Herbert H. Jackson, Jr., to make a decision within 30 working days after receipt of a response by the parties proposed for debarment, unless the Debarring Official extends the period for good cause.  (GPO Directive, ¶ 10(e)(1)).  Because the Debarment Response was submitted on August 3, 2018, the Debarring Official's decision on the debarment was due on September 14, 2018 (30 working days after receipt of the response), unless extended for good cause.  At no time did the Plaintiffs receive notice that the period for a decision was being extended for good cause.

63.     On January 11, 2019, nearly four months after a decision was due, GPO issued to the Plaintiffs a Notice of Debarment ("Final Decision"), which was the final decision from the Debarring Official, Defendant Herbert H. Jackson, Jr.  A copy of the Final Decision is attached as **Exhibit 4**.

64.     The Final Decision stated "As provided in the Notice of Proposed Debarment, there is adequate evidence to establish a lack of business integrity or business honesty and/or failure to comply with GPO Contract Terms which directly affects the current responsibility of Ironmark and United Book Press in the present case."  (Final Decision, p. 1).  The Final Decision cited

Ironmark's Debarment Response, in which Ironmark acknowledged that "it made mistakes in the administration of its contracts" but those "mistakes were mere administrative oversights and not actions meant to mislead or deceive the Government." *Id.* at 2.  The Final Decision then states "In their response, however, Ironmark does not raise a genuine issue of material fact that would warrant a hearing for an additional finding of facts.  Rather, in their response, Ironmark admits to a variety of internal 'failures' and 'mistakes' which they have committed over the course of the execution of the contract in question, mistakes of which serve as the basis of the current debarment action." *Id.*

65.     The Final Decision concluded that United Book Press and Ironmark are being debarred from doing business with the GPO.  *Id.*  However, the Final Decision does not specify the section of the GPO Directive relied upon for the debarment of United Book Press and Ironmark.

66.     In addition to the specific statement that United Book Press and Ironmark are being debarred from doing business with the GPO, the Final Decision listed all of the parties that were being debarred, which included all of the Plaintiffs.  *Id.*  However, the Final Decision does not specifically state the basis for the debarment of any of the individual Plaintiffs: Erik Bohnenstengel, Chris Marzullo, Jeff Ostenso, and Matt Marzullo.

### G.     The Final Decision Provides No Basis to Debar Plaintiffs

67.     The GPO Directive provides for four (4) possible causes of debarment.  First, the Debarring Official may debar a contractor for a conviction of or civil judgment for: (1) commission of fraud or a criminal offense in connection with (a) obtaining, (b) attempting to obtain, or (c) performing a public contract or subcontract; (2) violation of Federal or State antitrust statutes relating to the submission of offers; (3) commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property; or (4)

commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects the present responsibility of a Government contractor or subcontractor.  (GPO Directive, ¶9(a)).  None of the Plaintiffs have been convicted of any such crimes or been subject to a civil judgment relating to any of the above offenses.

68.     The second possible cause of debarment provided by the GPO Directive allows the Debarring Official to debar a contractor, based upon a preponderance of the evidence, for: (1) violation of the terms of a Government contract or subcontract so serious as to justify debarment, such as (a) willful failure to perform in accordance with the terms of one or more contracts, or (b) a history of failure to perform, or of unsatisfactory performance of one or more contracts; (2) delinquent federal taxes in an amount that exceeds $3,000; (3) knowing failure by a principal, until 3 years after final payment on any Government contract awarded to a contractor, to timely disclose to the Government, in connection with the award, performance, or closeout of the contract or a subcontract thereunder, credible evidence of: (a) a violation of Federal criminal law involving fraud, conflict of interest, bribery, or gratuity violations found in Title 18 of the U.S. Code, (b) violation of the civil False Claims Act; or (c) significant overpayment(s) on the contract, other than overpayments resulting from contract financing payments, or (4) any other cause of so serious or compelling a nature that it affects the present responsibility of a Government contractor or subcontractor.  (GPO Directive, ¶9(b)).  Neither United Book Press nor Ironmark (or any of the individual Plaintiffs), committed any serious violations of the GPO Contracts, including a failure to perform or unsatisfactory performance.  None of the Plaintiffs have delinquent federal taxes in an amount exceeding $3,000.  Neither United Book Press nor Ironmark has any principal that knowingly failed to timely disclose to the Government any violations of Title 18, the False Claims

Act, or any significant overpayments on the Contracts.  None of the Plaintiffs have committed any act of so serious or compelling a nature that it affects their present responsibility.

69.     The third possible cause of debarment provided by the GPO Directive allows the Debarring Official to debar a contractor based on a determination by the Secretary of Homeland Security or the Attorney General of the United States, that a contractor is not in compliance with Immigration and Nationality Act employment provisions.  (GPO Directive, ¶9(c)).  None of the Plaintiffs have been the subject of a determination by the Secretary of Homeland Security or the Attorney General of the United States.

70.     The fourth and final possible cause of debarment provided by the GPO Directive allows the Debarring Official to debar a contractor based on debarment by another agency.  (GPO Directive, ¶9(d)).  None of the Plaintiffs have been debarred by any other agency.

71.     None of the four possible causes for debarment provided in the GPO Directive provides a basis to debar the Plaintiffs. The Final Decision refers to evidence of "a lack of business integrity or business honesty" on the part of the Plaintiffs, however the GPO Directive only provides a cause for debarment if the contractor was **convicted** of or had a **civil judgment** for the commission of an offense indicating "lack of business integrity or business honesty" that "seriously and directly affects the present responsibility" of the contractor.  (GPO Directive, ¶9(a)(4), emphasis added).  None of the Plaintiffs have been convicted of any such offense, nor have any received any civil judgments for any such offense.

72.     The Final Decision also refers to a "failure to comply with GPO Contract Terms," however the GPO directive only provides a cause for debarment for a "Violation of the terms of a Government contract or subcontract **so serious as to justify debarment**."  (GPO Directive, ¶9(b)(1), emphasis added).  The two examples provided as "serious" violations of the terms of a

government contract are "Willful failure to perform in accordance with" the contract terms, or "A history of failure to perform, or of unsatisfactory performance of one or more contracts."  The Plaintiffs acknowledged in the Debarment Response that it failed to provide notice to GPO of the Asset Sale and the change in the production facility. However, neither of those meets the GPO Directive's definition of a violation "so serious as to justify debarment," as at no point did United Book Press or Ironmark fail to perform the requirements of the Contracts, nor were there ever any issues with unsatisfactory performance of the Contracts.

73.     The Final Decision also refers to "the current responsibility of Ironmark and United Book Press," however the GPO Directive only allows for debarment relating to present responsibility of a contractor if there is a "cause of so serious or compelling a nature that it affects the present responsibility" of a contractor.  (GPO Directive, ¶9(b)(4)).  There is no analysis in the Final Decision addressing the *present* responsibility of any of the Plaintiffs.  Rather the Final Decision appears to base this conclusion solely on the mistakes acknowledged by the Plaintiffs in the Debarment Response.  However, each of these acknowledged mistakes occurred prior to April 2018, which is nearly ten months prior to the issuance of the Final Decision.  The Final Decision does not address any of the individual Plaintiffs (*i.e.*, Erik Bohnenstengel, Chris Marzullo, Jeff Ostenso, and Matt Marzullo), nor does it explain how these mistakes committed nearly a year ago affect the *present* responsibility of the Plaintiffs.   Once the administrative mistakes were discovered, the Plaintiffs immediately began cooperating with GPO to address and resolve the errors.   None of those mistakes have any bearing on the *present* responsibility of any of the Plaintiffs.  Thus, GPO has not provided, or even referred to, any evidence relating to the Plaintiffs' present responsibility.

H.      **Harm Caused by the Debarment**

74.     The debarment of Ironmark, Erik Bohnenstengel, Chris Marzullo, Jeff Ostenso, and Matt Marzullo has negatively impacted their livelihoods and business.

75.     The debarments of Ironmark, Erik Bohnenstengel, Chris Marzullo, Jeff Ostenso, and Matt Marzullo stigmatize them.  Despite having committed no acts that affect their present responsibility, these individuals and entity are listed on the GPO List of Parties Excluded from Procurement Programs.  In addition, these individuals and entity are required to indicate that they have been debarred by a Federal agency on any certification made as part of an offer for a government contract.

76.     Ironmark has been unable to compete for GPO contracts since it was proposed for debarment.  Ironmark (and its predecessor, Frank Gumpert Printing) has performed for GPO for over 60 years, and GPO contracts make up a significant portion of its revenue.

77.     Because of the Proposed Debarment, Ironmark was unable to compete for awards on numerous GPO procurements that it fully intended to submit offers.  This includes the inability to submit an offer for GPO's Program 1205-S.

78.     GPO was accepting revised proposals for Program 1205-S in December 2018.  United Book Press held and performed a contract for GPO's 1205-S Program for over 20 years.  Ironmark submitted a proposal for the 1205-S Program (in United Book Press' name) in March 2018, but was unable to continue to compete for the award in December 2018 due to the Proposed Debarment.  GPO awarded the 1205-S Program contract to another contractor, for $1,551,231 per year over a 5-year contract.  Ironmark's proposed price was nearly $500,000 per year lower than the awarded price.  With Ironmark's extensive experience in the industry and for GPO, as well as its significantly lower proposed price, there was a strong likelihood that Ironmark would have

received the Program 1205-S contract.   Thus, the Proposed Debarment cost Ironmark an opportunity to receive the Program 1205-S contract, which would have brought the company approximately $5 million in revenue, and also cost the Government nearly $2.5 million dollars over the life of the contract.

79.     In addition to the lost opportunity to compete for Program 1205-S and other GPO contracts, Ironmark's placement on the GPO List of Parties Excluded from Procurement Programs, due to the Final Decision, has begun to affect Ironmark's non-GPO contracts.   Ironmark has received notice from at least one contracting agency with which it has an existing contract that the agency is aware that Ironmark is listed on the GPO List of Parties Excluded from Procurement Programs, and the agency is currently reevaluating Ironmark's contract.

## COUNT ONE

**DEFENDANTS' ACTIONS ARE ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION, UNSUPPORTED BY EVIDENCE, WITHOUT LEGAL BASIS, NOT IN ACCORDANCE WITH APPLICABLE LAW, REGULATIONS OR GPO PROCEDURES, AND VIOLATE DUE PROCESS OF LAW AS PROVIDED BY FEDERAL LAW AND THE UNITED STATES CONSTITUTION**

80.     The foregoing allegations are incorporated herein and in each subpart below as if fully restated.

### I.     The Defendants' debarment of Ironmark Is Arbitrary and Capricious

81.     The Defendants purported to debar Ironmark because of "adequate evidence to establish a lack of business integrity or business honesty and/or failure to comply with GPO Contract Terms which directly affects the current responsibility" of Ironmark.  (Final Decision, p. 1).  This stated reason does not meet any of the possible causes for debarment provided for in the GPO Directive.

82.     A debarring official may only debar a contractor relating to a "lack of business integrity or business honesty" if the contractor was convicted of an offense or had a civil judgment indicating a lack of business integrity or business honesty.  (GPO Directive, ¶9(a)).

83.     A debarring official may only debar a contractor for failure to comply with contract terms if the violation of contract terms are "so serious as to justify debarment," with the examples of such serious violations being a willful failure to perform in accordance with contract terms, or a history of failure to perform or of unsatisfactory performance.  (GPO Directive, ¶9(b)(1)).

84.     Ironmark has not been convicted of any offense or had any civil judgment against it relating to its business integrity or business honesty.

85.     Ironmark has not willfully failed to perform its obligations under its GPO Contracts.

86.     Ironmark does not have a history of a failure to perform, or of unsatisfactory performance, on its GPO Contracts.

87.     The Defendants purported to debar Ironmark without making any findings that cause existed to debar Ironmark. The debarment order is thus arbitrary and capricious on its face.

88.     Moreover, Defendants failed to explain how they arrived at the conclusion that the "current responsibility" of Ironmark was affected by the administrative mistakes.  This fact alone renders the debarment arbitrary and capricious.

89.     Defendants failed to provide, or even refer to, any evidence indicating that Ironmark is not presently responsible.

90.     No legal basis supports Defendants' debarment of Ironmark and the debarment of Ironmark should be overturned.

J.      **The Defendants' debarment of United Book Press Is Arbitrary and Capricious**

91.     The Defendants purported to debar United Book Press because of "adequate evidence to establish a lack of business integrity or business honesty and/or failure to comply with GPO Contract Terms which directly affects the current responsibility" of United Book Press. (Final Decision, p. 1).  This stated reason does not meet any of the possible causes for debarment provided for in the GPO Directive.

92.     A debarring official may only debar a contractor relating to a "lack of business integrity or business honesty" if the contractor was convicted of an offense or had a civil judgment indicating a lack of business integrity or business honesty.  (GPO Directive, ¶9(a)).

93.     A debarring official may only debar a contractor for failure to comply with contract terms if the violation of contract terms are "so serious as to justify debarment," with the examples of such serious violations being a willful failure to perform in accordance with contract terms, or a history of failure to perform or of unsatisfactory performance.  (GPO Directive, ¶9(b)(1)).

94.     United Book Press has not been convicted of any offense or had any civil judgment against it relating to its business integrity or business honesty.

95.     United Book Press has not willfully failed to perform its obligations under its GPO Contracts.

96.     United Book Press does not have a history of a failure to perform, or of unsatisfactory performance, on its GPO Contracts.

97.     The Defendants purported to debar United Book Press without making any findings that cause existed to debar United Book Press.  The debarment order is thus arbitrary and capricious on its face.  Moreover, Defendants failed to explain how they arrived at the conclusion that the "current responsibility" of United Book Press was affected by the administrative mistakes.

This fact alone renders the debarment arbitrary and capricious. Defendants failed to provide, or even refer to, any evidence indicating that United Book Press is not presently responsible.

98.     No legal basis supports Defendants' debarment of United Book Press and the debarment of United Book Press should be overturned.

### K.     The Defendants' debarment of Erik Bohnenstengel Is Arbitrary and Capricious

99.     The Defendants list Erik Bohnenstengel among the debarred parties, however Defendants fail to provide any explanation as to the cause of the debarment of Erik Bohnenstengel. The debarment of Erik Bohnenstengel is thus arbitrary and capricious on its face.

100.     In discussing their purported reasons for debarment, the Defendants only discuss Plaintiffs Ironmark and United Book Press. Defendants purported to debar Ironmark because of "adequate evidence to establish a lack of business integrity or business honesty and/or failure to comply with GPO Contract Terms which directly affects the current responsibility" of Ironmark. (Final Decision, p. 1). Even if this purported evidence is imputed upon Erik Bohnenstengel, Defendants' stated reason does not meet any of the possible causes for debarment provided for in the GPO Directive.

101.     A debarring official may only debar a contractor relating to a "lack of business integrity or business honesty" if the contractor was convicted of an offense or had a civil judgment indicating a lack of business integrity or business honesty. (GPO Directive, ¶9(a)).

102.     A debarring official may only debar a contractor for failure to comply with contract terms if the violation of contract terms are "so serious as to justify debarment," with the examples of such serious violations being a willful failure to perform in accordance with contract terms, or a history of failure to perform or of unsatisfactory performance. (GPO Directive, ¶9(b)(1)).

103.    Erik Bohnenstengel has not been convicted of any offense or had any civil judgment against him relating to his business integrity or business honesty.

104.    Erik Bohnenstengel has not willfully failed to perform his obligations under its GPO Contracts.

105.    Erik Bohnenstengel does not have a history of a failure to perform, or of unsatisfactory performance, on the GPO Contracts.

106.    Moreover, Defendants failed to explain how they arrived at the conclusion that the "current responsibility" of Erik Bohnenstengel was affected by the administrative mistakes.  This fact alone renders the debarment arbitrary and capricious.  Defendants failed to provide, or even refer to, any evidence indicating that Erik Bohnenstengel is not presently responsible.

107.    No legal basis supports Defendants' debarment of Erik Bohnenstengel and the debarment of Erik Bohnenstengel should be overturned.

**L.      The Defendants' debarment of Chris Marzullo Is Arbitrary and Capricious**

108.    The Defendants list Chris Marzullo among the debarred parties, however Defendants fail to provide any explanation as to the cause of the debarment of Chris Marzullo. The debarment of Chris Marzullo is thus arbitrary and capricious on its face.

109.    In discussing their purported reasons for debarment, the Defendants only discuss Plaintiffs Ironmark and United Book Press.  Defendants purported to debar Ironmark because of "adequate evidence to establish a lack of business integrity or business honesty and/or failure to comply with GPO Contract Terms which directly affects the current responsibility" of Ironmark. (Final Decision, p. 1).  Even if this purported evidence is imputed upon Chris Marzullo, Defendants' stated reason does not meet any of the possible causes for debarment provided for in the GPO Directive.

110.    A debarring official may only debar a contractor relating to a "lack of business integrity or business honesty" if the contractor was convicted of an offense or had a civil judgment indicating a lack of business integrity or business honesty.  (GPO Directive, ¶9(a)).

111.    A debarring official may only debar a contractor for failure to comply with contract terms if the violation of contract terms are "so serious as to justify debarment," with the examples of such serious violations being a willful failure to perform in accordance with contract terms, or a history of failure to perform or of unsatisfactory performance.  (GPO Directive, ¶9(b)(1)).

112.    Chris Marzullo has not been convicted of any offense or had any civil judgment against him relating to his business integrity or business honesty.

113.    Chris Marzullo has not willfully failed to perform his obligations under its GPO Contracts.

114.    Chris Marzullo does not have a history of a failure to perform, or of unsatisfactory performance, on the GPO Contracts.

115.    Moreover, Defendants failed to explain how they arrived at the conclusion that the "current responsibility" of Chris Marzullo was affected by the administrative mistakes.  This fact alone renders the debarment arbitrary and capricious.

116.    Defendants failed to provide, or even refer to, any evidence indicating that Chris Marzullo is not presently responsible.

117.    No legal basis supports Defendants' debarment of Chris Marzullo and the debarment of Chris Marzullo should be overturned.

**M.     The Defendants' debarment of Jeff Ostenso Is Arbitrary and Capricious**

118.     The Defendants list Jeff Ostenso among the debarred parties, however Defendants fail to provide any explanation as to the cause of the debarment of Jeff Ostenso.  The debarment of Jeff Ostenso is thus arbitrary and capricious on its face.

119.     In discussing their purported reasons for debarment, the Defendants only discuss Plaintiffs Ironmark and United Book Press.  Defendants purported to debar Ironmark because of "adequate evidence to establish a lack of business integrity or business honesty and/or failure to comply with GPO Contract Terms which directly affects the current responsibility" of Ironmark.  (Final Decision, p. 1.) Even if this purported evidence is imputed upon Jeff Ostenso, Defendants' stated reason does not meet any of the possible causes for debarment provided for in the GPO Directive.

120.     A debarring official may only debar a contractor relating to a "lack of business integrity or business honesty" if the contractor was convicted of an offense or had a civil judgment indicating a lack of business integrity or business honesty.  (GPO Directive, ¶9(a)).

121.     A debarring official may only debar a contractor for failure to comply with contract terms if the violation of contract terms are "so serious as to justify debarment," with the examples of such serious violations being a willful failure to perform in accordance with contract terms, or a history of failure to perform or of unsatisfactory performance.  (GPO Directive, ¶9(b)(1)).

122.     Jeff Ostenso has not been convicted of any offense or had any civil judgment against him relating to his business integrity or business honesty.

123.     Jeff Ostenso has not willfully failed to perform his obligations under its GPO Contracts.

124.     Jeff Ostenso does not have a history of a failure to perform, or of unsatisfactory performance, on the GPO Contracts.

125.     Moreover, Defendants failed to explain how they arrived at the conclusion that the "current responsibility" of Jeff Ostenso was affected by the administrative mistakes.  This fact alone renders the debarment arbitrary and capricious.

126.     Defendants failed to provide, or even refer to, any evidence indicating that Jeff Ostenso is not presently responsible.

127.     No legal basis supports Defendants' debarment of Jeff Ostenso and the debarment of Jeff Ostenso should be overturned.

### N.     The Defendants' debarment of Matt Marzullo Is Arbitrary and Capricious

128.     The Defendants list Matt Marzullo among the debarred parties, however Defendants fail to provide any explanation as to the cause of the debarment of Matt Marzullo.  The debarment of Matt Marzullo is thus arbitrary and capricious on its face.

129.     In discussing their purported reasons for debarment, the Defendants only discuss Plaintiffs Ironmark and United Book Press.  Defendants purported to debar Ironmark because of "adequate evidence to establish a lack of business integrity or business honesty and/or failure to comply with GPO Contract Terms which directly affects the current responsibility" of Ironmark. (Final Decision, p. 1).   Even if this purported evidence is imputed upon Matt Marzullo, Defendants' stated reason does not meet any of the possible causes for debarment provided for in the GPO Directive.

130.     A debarring official may only debar a contractor relating to a "lack of business integrity or business honesty" if the contractor was convicted of an offense or had a civil judgment indicating a lack of business integrity or business honesty.  (GPO Directive, ¶9(a)).

131.    A debarring official may only debar a contractor for failure to comply with contract terms if the violation of contract terms are "so serious as to justify debarment," with the examples of such serious violations being a willful failure to perform in accordance with contract terms, or a history of failure to perform or of unsatisfactory performance.  (GPO Directive, ¶9(b)(1)).

132.    Matt Marzullo has not been convicted of any offense or had any civil judgment against him relating to his business integrity or business honesty.

133.    Matt Marzullo has not willfully failed to perform his obligations under its GPO Contracts.

134.    Matt Marzullo does not have a history of a failure to perform, or of unsatisfactory performance, on the GPO Contracts.

135.    Moreover, Defendants failed to explain how they arrived at the conclusion that the "current responsibility" of Matt Marzullo was affected by the administrative mistakes.  This fact alone renders the debarment arbitrary and capricious.

136.    Defendants failed to provide, or even refer to, any evidence indicating that Matt Marzullo is not presently responsible.

137.    No legal basis supports Defendants' debarment of Matt Marzullo and the debarment of Matt Marzullo should be overturned.

## COUNT TWO

**DEFENDANTS FAILED TO PROVIDE NOTICE TO PLAINTIFFS AS REQUIRED BY THE GPO DIRECTIVE AND DENIED PLAINTIFFS DUE PROCESS OF LAW AS PROVIDED BY FEDERAL LAW AND THE UNITED STATES CONSTITUTION**

138.    The foregoing allegations are incorporated herein and in each subpart below as if fully restated.

**O.**     **The Defendants Failed to Provide Notice of the Cause of Debarment to Ironmark**

139.     The debarment of Ironmark was based upon the GPO Directive.  (Final Decision, p. 1).

140.     The GPO Directive allows the Debarring Official to debar a contractor for any of the specific causes listed in paragraph 9 of the GPO Directive according to the procedures set forth in paragraph 10 of the GPO Directive.  (GPO Directive, ¶8(a)).

141.     The procedures for debarment in the GPO Directive require the Debarring Official to provide in the Notice of Proposed Debarment notice to the contractor "Of the cause(s) relied upon under [GPO Directive] paragraph 9 for proposing debarment."  (GPO Directive, ¶10(d)(3)).

142.     The Notice of Proposed Debarment sent to Ironmark failed to follow the notice requirements set forth in paragraph 10 of the GPO Directive, as Ironmark was not notified of the specific cause relied upon under GPO Directive paragraph 9 for the proposed debarment.

143.     The failure to follow the procedures of the GPO Directive set forth above violates the law and also constitutes a denial of due process of law pursuant to Federal law and the United States Constitution, including the Fifth Amendment.

144.     Therefore, the debarment of Ironmark, based upon a cause not contained in the Notice of Proposed Debarment, should be overturned due to lack of notice.

**P.**     **The Defendants Failed to Provide Notice of the Cause of Debarment to United Book Press**

145.     The debarment of United Book Press was based upon the GPO Directive.  (Final Decision, p. 1).

146.     The GPO Directive allows the Debarring Official to debar a contractor for any of the specific causes listed in paragraph 9 of the GPO Directive according to the procedures set forth in paragraph 10 of the GPO Directive.  (GPO Directive, ¶8(a)).

147.     The procedures for debarment in the GPO Directive require the Debarring Official to provide in the Notice of Proposed Debarment notice to the contractor "Of the cause(s) relied upon under [GPO Directive] paragraph 9 for proposing debarment."  (GPO Directive, ¶10(d)(3)).

148.     The Notice of Proposed Debarment sent to United Book Press failed to follow the notice requirements set forth in paragraph 10 of the GPO Directive, as United Book Press was not notified of the specific cause relied upon under GPO Directive paragraph 9 for the proposed debarment.

149.     The failure to follow the procedures of the GPO Directive set forth above violates the law and also constitutes a denial of due process of law pursuant to Federal law and the United States Constitution, including the Fifth Amendment.

150.     Therefore, the debarment of United Book Press, based upon a cause not contained in the Notice of Proposed Debarment, should be overturned due to lack of notice.

### Q.     The Defendants Failed to Provide Notice of the Cause of Debarment to Erik Bohnenstengel

151.     The debarment of Erik Bohnenstengel was based upon the GPO Directive.  (Final Decision, p. 1).

152.     The GPO Directive allows the Debarring Official to debar a contractor for any of the specific causes listed in paragraph 9 of the GPO Directive according to the procedures set forth in paragraph 10 of the GPO Directive.  (GPO Directive, ¶8(a)).

153.     The procedures for debarment in the GPO Directive require the Debarring Official to provide in the Notice of Proposed Debarment notice to the contractor "Of the cause(s) relied upon under [GPO Directive] paragraph 9 for proposing debarment."  (GPO Directive, ¶10(d)(3)).

154.     The Notice of Proposed Debarment sent to Erik Bohnenstengel failed to follow the notice requirements set forth in paragraph 10 of the GPO Directive, as Erik Bohnenstengel was not notified of the specific cause relied upon under GPO Directive paragraph 9 for the proposed debarment.

155.     The failure to follow the procedures of the GPO Directive set forth above violates the law and also constitutes a denial of due process of law pursuant to Federal law and the United States Constitution, including the Fifth Amendment.

156.     Therefore, the debarment of Erik Bohnenstengel, based upon a cause not contained in the Notice of Proposed Debarment, should be overturned due to lack of notice.

**R.      The Defendants Failed to Provide Notice of the Cause of Debarment to Chris Marzullo**

157.     The debarment of Chris Marzullo was based upon the GPO Directive.   (Final Decision, p. 1).

158.     The GPO Directive allows the Debarring Official to debar a contractor for any of the specific causes listed in paragraph 9 of the GPO Directive according to the procedures set forth in paragraph 10 of the GPO Directive.  (GPO Directive, ¶8(a)).

159.     The procedures for debarment in the GPO Directive require the Debarring Official to provide in the Notice of Proposed Debarment notice to the contractor "Of the cause(s) relied upon under [GPO Directive] paragraph 9 for proposing debarment."  (GPO Directive, ¶10(d)(3)).

160.     The Notice of Proposed Debarment sent to Chris Marzullo failed to follow the notice requirements set forth in paragraph 10 of the GPO Directive, as Chris Marzullo was not

notified of the specific cause relied upon under GPO Directive paragraph 9 for the proposed debarment.

161.    The failure to follow the procedures of the GPO Directive set forth above violates the law and also constitutes a denial of due process of law pursuant to Federal law and the United States Constitution, including the Fifth Amendment.

162.    Therefore, the debarment of Chris Marzullo, based upon a cause not contained in the Notice of Proposed Debarment, should be overturned due to lack of notice.

**S.    The Defendants Failed to Provide Notice of the Cause of Debarment to Jeff Ostenso**

163.    The debarment of Jeff Ostenso was based upon the GPO Directive.  (Final Decision, p. 1).

164.    The GPO Directive allows the Debarring Official to debar a contractor for any of the specific causes listed in paragraph 9 of the GPO Directive according to the procedures set forth in paragraph 10 of the GPO Directive.  (GPO Directive, ¶8(a)).

165.    The procedures for debarment in the GPO Directive require the Debarring Official to provide in the Notice of Proposed Debarment notice to the contractor "Of the cause(s) relied upon under [GPO Directive] paragraph 9 for proposing debarment."  (GPO Directive, ¶10(d)(3)).

166.    The Notice of Proposed Debarment sent to Jeff Ostenso failed to follow the notice requirements set forth in paragraph 10 of the GPO Directive, as Jeff Ostenso was not notified of the specific cause relied upon under GPO Directive paragraph 9 for the proposed debarment.

167.    The failure to follow the procedures of the GPO Directive set forth above violates the law and also constitutes a denial of due process of law pursuant to Federal law and the United States Constitution, including the Fifth Amendment.

168.     Therefore, the debarment of Jeff Ostenso, based upon a cause not contained in the Notice of Proposed Debarment, should be overturned due to lack of notice.

>     **T.**     **The Defendants Failed to Provide Notice of the Cause of Debarment to Matt Marzullo**

169.     The debarment of Matt Marzullo was based upon the GPO Directive.   (Final Decision, p. 1).

170.     The GPO Directive allows the Debarring Official to debar a contractor for any of the specific causes listed in paragraph 9 of the GPO Directive according to the procedures set forth in paragraph 10 of the GPO Directive.  (GPO Directive, ¶8(a)).

171.     The procedures for debarment in the GPO Directive require the Debarring Official to provide in the Notice of Proposed Debarment notice to the contractor "Of the cause(s) relied upon under [GPO Directive] paragraph 9 for proposing debarment."  (GPO Directive, ¶10(d)(3)).

172.     The Notice of Proposed Debarment sent to Matt Marzullo failed to follow the notice requirements set forth in paragraph 10 of the GPO Directive, as Matt Marzullo was not notified of the specific cause relied upon under GPO Directive paragraph 9 for the proposed debarment.

173.     The failure to follow the procedures of the GPO Directive set forth above violates the law and also constitutes a denial of due process of law pursuant to Federal law and the United States Constitution, including the Fifth Amendment.

174.     Therefore, the debarment of Matt Marzullo, based upon a cause not contained in the Notice of Proposed Debarment, should be overturned due to lack of notice.

**COUNT THREE**

**DECLARATORY RELIEF**

175.     The foregoing allegations are incorporated herein as if fully restated.

176.     A justiciable controversy has arisen with respect to the proper interpretation of the GPO's debarment policies, *i.e.*, the GPO Directive.

177.     Pursuant to the Declaratory Judgments Act (28 U.S.C. §§ 2201-2202), Plaintiffs seek the Court's judgment as to the Plaintiffs' and Defendants' respective rights and obligations under the GPO Directive.

178.     Specifically, Plaintiffs seek the following declarations: (1) debarment of Ironmark is void because it was arbitrary, capricious, unconscionable, unwarranted, an abuse of discretion, unsupported by evidence, and otherwise contrary to law; (2) debarment of United Book Press is void because it was arbitrary, capricious, unconscionable, unwarranted, an abuse of discretion, unsupported by evidence, and otherwise contrary to law; (3) debarment of Erik Bohnenstengel is void because it was arbitrary, capricious, unconscionable, unwarranted, an abuse of discretion, unsupported by evidence, and otherwise contrary to law; (4) debarment of Chris Marzullo is void because it was arbitrary, capricious, unconscionable, unwarranted, an abuse of discretion, unsupported by evidence, and otherwise contrary to law; (5) debarment of Jeff Ostenso is void because it was arbitrary, capricious, unconscionable, unwarranted, an abuse of discretion, unsupported by evidence, and otherwise contrary to law; and (6) debarment of Matt Marzullo is void because it was arbitrary, capricious, unconscionable, unwarranted, an abuse of discretion, unsupported by evidence, and otherwise contrary to law.

179.     Plaintiffs further seek a declaration that Defendants have violated Plaintiffs' right to substantive and procedural due process under the United States Constitution in their interpretation, application, and enforcement of the GPO debarment regulations found in the GPO Directive. Plaintiffs therefore request that the Court declare Defendants' debarment of Plaintiffs unconstitutional, improper, null and void, and that Defendants must remove Plaintiffs from the

GPO List of Parties Excluded from Procurement Programs and any other list maintained by the U.S. Government that identifies debarred contractors.

## V.    REQUESTED RELIEF

Wherefore, Plaintiffs request the following:

1.       An order pursuant to 5 U.S.C. § 706 and 28 U.S.C. §§ 2201-02 setting aside the debarment of Ironmark as void because it was arbitrary, capricious, an abuse of discretion, unsupported by evidence, and otherwise contrary to law and mandating Defendants to remove Ironmark from the GPO List of Parties Excluded from Procurement Programs and any other list maintained by the U.S. Government that identifies debarred contractors.

2.       An order pursuant to 5 U.S.C. § 706 and 28 U.S.C. §§ 2201-02 setting aside the debarment of United Book Press as void because it was arbitrary, capricious, an abuse of discretion, unsupported by evidence, and otherwise contrary to law and mandating Defendants to remove United Book Press from the GPO List of Parties Excluded from Procurement Programs and any other list maintained by the U.S. Government that identifies debarred contractors.

3.       An order pursuant to 5 U.S.C. § 706 and 28 U.S.C. §§ 2201-02 setting aside the debarment of Erik Bohnenstengel as void because it was arbitrary, capricious, an abuse of discretion, unsupported by evidence, and otherwise contrary to law and mandating Defendants to remove Erik Bohnenstengel from the GPO List of Parties Excluded from Procurement Programs and any other list maintained by the U.S. Government that identifies debarred contractors.

4.       An order pursuant to 5 U.S.C. § 706 and 28 U.S.C. §§ 2201-02 setting aside the debarment of Chris Marzullo as void because it was arbitrary, capricious, an abuse of discretion, unsupported by evidence, and otherwise contrary to law and mandating Defendants to remove

Chris Marzullo from the GPO List of Parties Excluded from Procurement Programs and any other list maintained by the U.S. Government that identifies debarred contractors.

     5.     An order pursuant to 5 U.S.C. § 706 and 28 U.S.C. §§ 2201-02 setting aside the debarment of Jeff Ostenso as void because it was arbitrary, capricious, an abuse of discretion, unsupported by evidence, and otherwise contrary to law and mandating Defendants to remove Jeff Ostenso from the GPO List of Parties Excluded from Procurement Programs and any other list maintained by the U.S. Government that identifies debarred contractors.

     6.     An order pursuant to 5 U.S.C. § 706 and 28 U.S.C. §§ 2201-02 setting aside the debarment of Matt Marzullo as void because it was arbitrary, capricious, an abuse of discretion, unsupported by evidence, and otherwise contrary to law and mandating Defendants to remove Matt Marzullo from the GPO List of Parties Excluded from Procurement Programs and any other list maintained by the U.S. Government that identifies debarred contractors.

Dated: March 5, 2019          Respectfully Submitted,

                    OFFIT KURMAN, P.A.

                    /s/ Edward J. Tolchin
                    Edward J. Tolchin, DC Bar No.: 297556
                    4800 Montgomery Lane, 9th Floor
                    Bethesda, MD 20814
                    Phone: (240) 507-1769
                    Fax: (240) 507-1735
                    etolchin@offitkurman.com

OF COUNSEL:

OFFIT KURMAN
Bryan R. King, D.C. Bar No. 974698
8000 Towers Crescent Drive, Suite 1500
Tysons Corner, VA 22182
Phone: (703) 745-1820
Fax: (703) 745-1835
bking@offitkurman.com